IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| APRIL L. LISTON and husband,<br>BRENT A. LISTON, | ) | |
| | ) | |
| Plaintiffs | | |
| | ) | |
| v. | | No. 4:03-cv-110 |
| | ) | |
| THE AMERICAN NATIONAL<br>RED CROSS, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

This is a diversity action for alleged negligence of a nurse removed to this court from the Circuit Court of Coffee County, Tennessee. Plaintiffs claim that the Red Cross nurse, Diana James, inserted a needle into Ms. Liston's arm and, in the process of doing so, punctured a nerve controlling the use of her left hand and arm. She further claims that Nurse James' insertion of the needle into her arm fell below the acceptable standard of care for nursing care in Coffee County and similar communities, and this deviation was the proximate cause of the resulting injuries to Ms. Liston. Currently pending is defendant's motion for summary judgment [Court File #12]. For the reasons that follow, that motion will be denied.

# I.

## *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiffs.

On or about November 26, 2002, plaintiff April Liston donated blood in Tullahoma, Tennessee, to the American National Red Cross. The Red Cross nurse, Diana James, inserted a needle into the arm of plaintiff Ms. Liston and in the process of doing so punctured a nerve controlling the use of her left arm and hand. Plaintiffs allege that in inserting the needle into Ms. Liston's arm and puncturing the nerve, Ms. James fell below the acceptable standard of care for nursing care in Coffee County, Tennessee, and in similar communities. They claim that this deviation was the proximate cause of resulting injuries to Ms. Liston which otherwise would not have occurred.

Upon insertion of the needle, Ms. Liston felt an immediate shock sensation in her arm, and shortly thereafter she noted that she was limited in using the arm. She describes the sensation at the time of insertion of the needle as akin to an "electrical shock". She claims that she notified the nurse of the shock and the

nurse stated that she must have hit a nerve and removed the needle and took the blood from another area on plaintiff's arm.

Plaintiff claims that since that time her ability to use that arm has been greatly diminished and she has been required to undergo surgery at Vanderbilt Hospital to correct her condition. Dr. Jeffrey Watson, who treated the plaintiff, performed a nerve repair surgery in which he buried the sensitive nerve in a muscle.

When Dr. Watson gave his deposition in this case he testified as follows:

> Q. Is there anything, Doctor, that the phlebotomist could do to avoid something like this?
>
> A. I have given some thought to this, and I do not know how a phlebotomist can avoid - avoid non-palpable subcutaneous sensory nerves reliably without just going to a new area and jeopardizing another nerve in that area.

Watson deposition at 39, lines 10-16.

With respect to warnings regarding possible nerve damage upon giving blood, plaintiff signed a donor consent form entitled "What You Must Know Before Giving Blood," which informed her that nerve damage was a rare, but possible, complication of blood donation. Plaintiff signed a donor consent stating that she had read and had a chance to ask questions about this information.

3

With respect to the testimony of Dr. Watson, there is no mention that he professed any knowledge of the standard of care in Tullahoma and surrounding communities in taking blood from a donor. Nor is there any expert testimony or affidavits indicating that the treatment by the Red Cross nurse complied with the applicable standard of care.

In moving for summary judgment, defendant first contends that plaintiff will not be able to carry her burden of proof with respect to an element of her negligence claim; that is, that the defendant breached the duty of care owed to her. Second, defendant contends that plaintiff Brent Liston's derivative loss of consortium claim must fail because his wife's condition has had little or no effect on his relationship with his wife or their daily activities.

II.

*Summary Judgment Standard*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under

4

uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.
5

III.

## *Analysis*

Defendant contends that it is entitled to summary judgment because plaintiff cannot show an essential element of the negligence claim; that is, that the Red Cross nurse breached a duty of care which she owed to the plaintiff. Essentially, defendant contends that striking the nerve was simply a rare, unfortunate and unavoidable accident which could not have been prevented no matter what the standard of care the nurse observed. There is no medical testimony in the record with respect to what the applicable standard of care consists of. There is the testimony from plaintiff's treating physician, Dr. Watson, which defendant relies on and in which he states that he does not know of anything that could have been done to avoid the injury. However, he is not a phlebotomist nor does he testify that he is aware of the standard of care used in the area by the appropriate medical experts. There is simply no evidence pointing either way on the subject.

Under the circumstances, summary judgment at this point would be inappropriate. The moving party has the initial burden of persuading the court that there are no genuine issues of material fact. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). The defendant failed to meet that initial burden in this case. Accordingly, the plaintiffs were not required to come forward with specific facts by way of affidavit or

other appropriate discovery materials establishing that a disputed material fact did exist. *Id.* at 215.

With respect to the loss of consortium claim, I find that questions of material fact remain with respect to whether Ms. Liston's condition had any effect on her relationship with her husband or their daily activities.

IV.

*Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Court File #12] will be DENIED.

Order accordingly.

                                             *s/ James H. Jarvis*
                                          UNITED STATES DISTRICT JUDGE

7

Case 4:03-cv-00110   Document 33   Filed 05/12/05   Page 7 of 7   PageID #: 57